IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WILLIS C. MCALLISTER, | ) | CV. NO. 11-00056 DAE-KSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| HAWAIIANA MANAGEMENT | ) | |
| CO., LTD., and AOAO ROYAL | ) | |
| CAPITAL PLAZA | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER: (1) GRANTING IN PART DEFENDANT AOAO ROYAL
CAPITAL PLAZA'S MOTION TO DISMISS;(2) GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION TO DISMISS;
AND (3) DENYING WITHOUT PREJUDICE PLAINTIFF'S
<u>MOTION FOR SUMMARY JUDGMENT</u>

Pursuant to Local Rule 7.2(d), the Court finds this matter suitable for

disposition without a hearing.  After reviewing the motions and supporting

memoranda, the Court:  **GRANTS IN PART** Defendant AOAO Royal Capital

Plaza's Motion to Dismiss (Doc. # 45); **GRANTS IN PART AND DENIES IN**

**PART** Defendants' Motion to Dismiss (Docs. # 39, 42); and **DENIES**

**WITHOUT PREJUDICE** Plaintiff's Motion for Summary Judgment ("Motion").

(Doc. # 46.)

BACKGROUND

The instant action stems from allegations that Defendants Hawaiiana Management Company and AOAO Royal Capital Plaza (collectively, "Defendants") unlawfully discriminated and retaliated against Plaintiff Willis C. McAllister ("Plaintiff") in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.

In December 2008, Plaintiff, who is African-American, was hired as a full-time security guard at the Royal Capital Plaza ("RCP") condominium complex. ("SAC," Doc. # 38 ¶¶ 1.1, 18.1.) Hawaiiana Management Company ("HMC") is the managing agent of the RCP. (Id. ¶ 2.2.) On August 6, 2009, Defendants terminated Plaintiff. (See id. ¶ 52.1.)

Plaintiff alleges, inter alia, that his supervisors treated his co-workers more favorably than him in that his supervisors did not investigate his complaints about certain tenants' "harassing conduct" toward him, but investigated similar complaints that "non-African American security guards" made against tenants. (Id. ¶¶ 33.1–33.10; 34.9–34.10; 38.1–38.2.) Plaintiff also alleges that his supervisors reprimanded him for failing to follow protocol but did not discipline other security guards for similar conduct. (Id. ¶¶ 42.2; 46.1; 47.2.)

2

On May 12, 2010, Plaintiff filed an EEOC Complaint, asserting that his termination violated Title VII.  (Id. ¶ 3.1.)  On October 22, 2010, the EEOC mailed Plaintiff a Notice of his Right to Sue; Plaintiff received the Notice on October 26, 2010.  (Id. ¶ 3.3.)

PROCEDURAL HISTORY

On January 24, 2011, Plaintiff, proceeding pro se, filed a Complaint against HMC, alleging, inter alia, violations of Title VII of the Civil Rights Act of 1964.[1]  (Doc. # 1.)  On February 14, 2011, Plaintiff filed an Amended Complaint against HMC and RCP.  (Doc. # 9.)  On March 31, 2011, Plaintiff filed a Motion to Dismiss his Common Law Tort Claims for Negligence.  (See Doc. # 15.)  The Court granted Plaintiff's request on May 13, 2011.  (Doc. # 22.)

On July 15, 2011, Plaintiff filed a Motion for Partial Summary Judgment.  ("Mot.," Doc. # 25.)  On August 24, 2011, the Court sua sponte dismissed Plaintiff's Complaint without prejudice for failure to comply with Federal Rule of Civil Procedure 8; denied without prejudice Plaintiff's Motion for Partial Summary Judgment as moot; and denied without prejudice Plaintiff's

---

[1]  With his Complaint, Plaintiff filed a Motion for Leave to Proceed in Forma Pauperis ("IFP Motion") as well as a Request for Appointment of Counsel ("Appointment Motion").  (Docs. ## 3, 4.)  On January 26, 2011, United States Magistrate Judge Kevin S.C. Chang denied both the Appointment Motion and the IFP Motion.  (Doc. # 5.)

Motions to Strike various Defendants' declarations and exhibits.  (Doc. # 36.)  The Court granted Plaintiff leave to amend within 30 days of the Order.  (Id.)

On September 23, 2011, Plaintiff filed a Second Amended Complaint ("SAC") against Defendants.  ("SAC," Doc. # 38.)  Plaintiff's SAC alleges causes of action for: (1) "Hostile Work Environment; Retaliation (Continuing Violation)"; (2) "Hostile Work Environment; Disparate Treatment-Race (Continuing Violation)"; (3) "Harassment based on race/Tangible Action (Vicarious Liability)"; (4) "Hostile Work Environment; Harassment-Race (Continuing Violation)"; and (5) "Intentional Inflection [sic] of Emotional Distress-Race."  (SAC ¶¶ 5.1–5.5.) Plaintiff states that he brings claims under both Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.

On October 13, 2011, Defendants filed the instant Motion to Dismiss Plaintiff's Second Amended Complaint with Prejudice.  (Doc. # 39.)  On October 24, 2011, Plaintiff filed a Memorandum in Opposition to Defendants' Motion to Dismiss.  (Doc. # 41.)  On November 23, 2011, Defendants filed another Motion to Dismiss Plaintiff's Second Amended Complaint with Prejudice.[2]  (Doc. # 42.)  On December 2, 2011, RCP filed a Motion to Dismiss Plaintiff's Complaint with

---

[2]  Defendants' two motions to dismiss are virtually identical.  The Court treats the Defendants' Motion filed on October 13, 2011 as the operative motion.

4

Prejudice.  (Doc. # 45.)  On December 5, 2011, Plaintiff filed an Opposition to the Defendants' Three Motions to Dismiss.  (Doc. # 50.)  On December 7, Plaintiff filed a Supplemental Filing in Opposition to the Defendants' Three Motions to Dismiss.  (Doc. # 53.)  On January 16, 2012, Defendants filed a Reply.  (Doc. # 57.)  On January 16, 2012, RCP filed a Reply.  (Doc. # 58.)

On December 2, 2011, Plaintiff filed the instant Motion for Summary Judgment.  (Doc. # 46.)   On January 5, 2012, Defendants filed a Memorandum in Opposition to Plaintiff's Motion for Summary Judgment.  (Doc. # 54.)  On January 9, 2012, Plaintiff filed a Reply to Defendant's Opposition.  (Doc. # 56.)

## STANDARD OF REVIEW

I.      Federal Rule of Civil Procedure 12(b)(6)

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule"), a motion to dismiss will be granted where the plaintiff fails to state a claim upon which relief can be granted.  Review is limited to the contents of the complaint and matters properly subject to judicial notice.  See Colony Cove Properties, LLC v. City of Carson, 640 F.3d 948, 955 (9th Cir. 2011).  A complaint may be dismissed as a matter of law for one of two reasons: "(1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal claim." Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984)

(citation omitted).  Allegations of fact in the complaint must be taken as true and construed in the light most favorable to the plaintiff.  See Livid Holdings Ltd. v. Salomon Smith Barney, Inc., 416 F.3d 940, 946 (9th Cir. 2005).

A complaint need not include detailed facts to survive a Rule 12(b)(6) motion to dismiss.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007). In providing grounds for relief, however, a plaintiff must do more than recite the formulaic elements of a cause of action.  See id. at 556–57; see also McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988) ("[C]onclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim.") (citation omitted).  "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal quotations and citations omitted).  Thus, "bare assertions amounting to nothing more than a formulaic recitation of the elements" of a claim "are not entitled to an assumption of truth."  Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[T]he non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.") (internal quotations and citations omitted).

A court looks at whether the facts in the complaint sufficiently state a "plausible" ground for relief.  See Twombly, 550 U.S. at 570.  A plaintiff must include enough facts to raise a reasonable expectation that discovery will reveal evidence and may not just provide a speculation of a right to relief.  Id. at 586.  When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court."  Id. at 558 (citation omitted).  If a court dismisses the complaint or portions thereof, it must consider whether to grant leave to amend.  Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (finding that leave to amend should be granted "if it appears at all possible that the plaintiff can correct the defect") (internal quotations and citations omitted).

A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when "the running of the statute is apparent on the face of the complaint."  Huynh v. Chase Manhattan Bank, 465 F.3d 992, 997 (9th Cir. 2006).  A complaint cannot be dismissed unless it appears beyond a doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.  Conley v. Gibson, 335 U.S. 41 (1957); Pesnell v. Arsenault, 543 F.3d 1038, 1042 (9th Cir. 2008).  A motion to dismiss based only on the running of the statute of limitations period may be granted "if the assertions

of the complaint, read with liberality, would not permit the plaintiff to prove that the statute was tolled." Supermail Cargo, Inc. v. United States, 68 F.3d 1204, 1206-07 (9th Cir. 1995) (internal quotations omitted).

II.     Federal Rule of Civil Procedure 8

Federal Rule of Civil Procedure 8 mandates that a complaint include a "short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), and that each allegation "be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). A complaint that is so confusing that its "'true substance, if any, is well disguised'" may be dismissed sua sponte for failure to satisfy Rule 8. Hearns v. San Bernardino Police Dep't, 530 F.3d 1124, 1131 (9th Cir. 2008) (quoting Gillibeau v. City of Richmond, 417 F.2d 426, 431 (9th Cir. 1969); see also McHenry v. Renne, 84 F.3d 1172, 1180 (9th Cir. 1996) ("Something labeled a complaint but written . . . , prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint."); Nevijel v. N. Coast Life Ins. Co., 651 F.2d 671, 673 (9th Cir. 1981) ("A complaint which fails to comply with [Rule 8] may be dismissed with prejudice[.]").

Put slightly differently, a complaint may be dismissed for failure to comply with Rule 8 where it fails to provide the defendants fair notice of the

wrongs they have allegedly committed.  See McHenry, 84 F.3d at 1178–80

(affirming dismissal of complaint where "one cannot determine from the complaint

who is being sued, for what relief, and on what theory, with enough detail to guide

discovery"); cf. Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1105 n.4

(9th Cir. 2008) (finding dismissal under Rule 8 was in error where "the complaint

provide[d] fair notice of the wrongs allegedly committed by defendants and [did]

not qualify as overly verbose, confusing, or rambling").  Rule 8 requires more than

"the-defendant-unlawfully-harmed-me accusation[s]." Ashcroft v. Iqbal, 129 S. Ct.

1937, 1949 (2009) (internal quotations omitted).  Further, "[a] pleading that offers

labels and conclusions or a formulaic recitation of the elements of a cause of action

will not do."  Id. (internal quotations omitted). "Nor does a complaint suffice if it

tenders naked assertions devoid of further factual enhancement." Id. (internal

quotations omitted).  "The propriety of dismissal for failure to comply with Rule 8

does not depend on whether the complaint is wholly without merit." McHenry, 84

F.3d at 1179.

   The court may "begin by identifying pleadings that, because they are

no more than conclusions, are not entitled to the assumption of truth." Iqbal, 129

S. Ct. at 1950.  Legal conclusions must be supported by factual allegations. Id.

"When there are well-pleaded factual allegations, a court should assume their

veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

III.   Rule 12(b)(5)

Rule 12(b)(5) provides for dismissal for insufficient service of process.  When a defendant challenges service, the plaintiff bears the burden of establishing the validity of service as governed by Federal Rule of Civil Procedure 4.  See Brockmeyer v. May, 383 F.3d 798, 801 (9th Cir. 2004).

IV.   Motion for Summary Judgment

Rule 56 requires summary judgment to be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Porter v. Cal. Dep't of Corr., 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  A main purpose of summary judgment is to dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  See id. at 323.  A moving party without the ultimate burden of persuasion at trial—usually,

10

but not always, the defendant—has both the initial burden of production and the

ultimate burden of persuasion on a motion for summary judgment.  Nissan Fire &

Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden

initially falls upon the moving party to identify for the court those "portions of the

materials on file that it believes demonstrate the absence of any genuine issue of

material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d

626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

  Once the moving party has carried its burden under Rule 56, the

nonmoving party "must set forth specific facts showing that there is a genuine

issue for trial" and may not rely on the mere allegations in the pleadings.  Porter,

419 F.3d  at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256

(1986)).  In setting forth "specific facts," the nonmoving party may not meet its

burden on a summary judgment motion by making general references to evidence

without page or line numbers.  S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885,

889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary

judgment, the court shall have no independent duty to search and consider any part

of the court record not otherwise referenced in the separate concise statements of

the parties.").  "[A]t least some 'significant probative evidence' " must be

produced.  T.W. Elec. Serv., 809 F.2d at 630  (quoting First Nat'l Bank of Ariz. v.

Cities Serv. Co., 391 U.S. 253, 290 (1968)).  "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact."  Addisu, 198 F.3d at 1134.  Further, the Ninth Circuit has "refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony."  Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002) (citing Kennedy v. Applause, Inc., 90 F.3d 1477, 1481 (9th Cir. 1996)).  "Conclusory allegations unsupported by factual data cannot defeat summary judgment."  Rivera v. Nat'l R.R. Passenger Corp., 331 F.3d 1074, 1078 (9th Cir. 2003).

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact."  T.W. Elec. Serv., 809 F.2d at 631.  In other words, evidence and inferences must be construed in the light most favorable to the nonmoving party.  Porter, 419 F.3d at 891.  The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage.  Id.; see also Nelson v. City of Davis, 571 F.3d 924 (9th Cir. 2009) ("[C]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.") (citations omitted).  However, inferences

may be drawn from underlying facts not in dispute, as well as from disputed facts

that the judge is required to resolve in favor of the nonmoving party.  T.W. Elec.

Serv., 809 F.2d at 631.

## DISCUSSION

I.      Royal Capital Plaza's Motion to Dismiss

RCP argues that Plaintiff's Title VII claims against it are untimely

because Plaintiff did not name it as a defendant until he filed his First Amended

Complaint on February 14, 2011, after the ninety-day statute of limitations expired.

(Doc. # 45-1 at 4.)  Title VII provides a ninety-day period within which to file a

federal action after receipt of an EEOC right-to-sue letter.  See 42 U.S.C. § 2000e-

5(f)(1).

Plaintiff states that the EEOC mailed him a Notice of Right to Sue on

October 22, 2010 and that he received this Notice on October 26, 2010.  (SAC

¶ 3.3.)  He filed his original Complaint against HMC on January 24, 2011.

Plaintiff does not appear to dispute that he filed his First Amended Complaint

naming both HMC and RCP after the ninety-day Title VII statute of limitations had

expired.  However, he cites Federal Rule of Civil Procedure 15(c)(1), which allows

for amended complaints to "relate back" to the date of the original complaint under

certain circumstances.

The purpose of relation back is "to balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits."  <u>Krupski v. Costa Crociere S.p.A.</u>, 130 S. Ct. 2485, 2494 (2010).  Rule 15(c)(1) provides, in pertinent part, that an amendment to a pleading relates back to the date of the original pleading when:

> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

"That a plaintiff knows of a party's existence does not preclude her from making a mistake with respect to that party's identity. . . . The only question under Rule 15(c)(1)(C)(ii) . . . is whether [the added defendant] knew or should have known that, absent some mistake, the action would have been brought against him."  <u>Krupski</u>, 130 S. Ct. at 2494.

Here, Plaintiff has not met his burden of showing that his amended complaint as to his Title VII claims satisfy the requirements of Rule 15(c)(1)(C).

14

See Brooks v. ComUnity Lending, Inc., 2009 WL 1513397, at *4 (N.D. Cal. May

29, 2009) ("The Rule [15(c)] has been interpreted to mean that for 'claims asserted

against a new defendant to relate back in time to the original complaint, the

plaintiff must demonstrate . . . that the new party knew or should have known that

the action would have been brought against the party but for a mistake in

identity.") (citing Bass v. World Wrestling Fed'n Entm't, Inc., 129 F. Supp. 2d

491, 507–08 (E.D. N.Y. 2001).  Although Plaintiff quoted in part the relevant rule

and cited some cases, he does not even attempt to demonstrate, nor are there any

factual allegations suggesting that the requirements of Rule 15(c)(3) have been

satisfied.  Therefore, the Court finds that Plaintiff's Title VII claims against RCP

do not relate back to the original Complaint and that these claims against RCP are

time-barred.

          The Court, however, is cognizant that Plaintiff is proceeding pro se.

The Court also cannot say with certainty that further amendment would be futile.

See Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 969

(9th Cir. 2010) ("[A] complaint cannot be dismissed unless it appears beyond

doubt that the plaintiff can prove no set of facts that would establish the timeliness

of the claim.") (quoting Supermail Cargo, Inc. v. U.S., 68 F.3d 1204, 1207 (9th

Cir. 1995)).  Accordingly, the Court GRANTS RCP's Motion to Dismiss as to

Plaintiff's Title VII claims and grants Plaintiff leave to amend to address whether his claims relate back to the original complaint.

## II.   Defendants' Motion to Dismiss

Defendants argue that Plaintiff's SAC does not comply with Rule 8 or Rule 12(b)(6).  In particular, Defendants assert that the SAC is not "simple, concise or direct" and is unintelligible.  Defendants also argue that Plaintiff's SAC was improperly served.

### A.   Plaintiff's Claims

As a preliminary matter, the Court observes that Plaintiff's SAC is 49 pages long and littered with numerous allegations and facts that are confusing, repetitive, and irrelevant to his Title VII and Section 1981 claims.  The SAC lists several causes of action on one page, followed by nearly 40 pages of allegations.  However, in considering that Plaintiff is proceeding pro se and in liberally viewing the SAC in the light most favorable to Plaintiff, as this Court must, the Court finds that Plaintiff has stated sufficient factual allegations as to two of his claims.

As stated above, Plaintiff's SAC lists causes of action for: (1) "Hostile Work Environment; Retaliation (Continuing Violation)"; (2) "Hostile Work Environment; Disparate Treatment-Race (Continuing Violation)"; (3) "Harassment based on race/Tangible Action (Vicarious Liability)"; (4) "Hostile Work

Environment; Harassment-Race (Continuing Violation)"; and (5) "Intentional

Inflection [sic] of Emotional Distress-Race."  (SAC ¶¶ 5.1–5.5.)  In considering

Plaintiff's SAC and Plaintiff's Opposition, the Court construes the SAC as alleging

claims for hostile work environment based on racial harassment, disparate

treatment and retaliation in violation of Title VII and 42 U.S.C. § 1981, and

intentional infliction of emotional distress.

    1.    <u>Disparate Treatment</u>

       Title VII "guarantees employees 'the right to work in an environment

free from discriminatory intimidation, ridicule, and insult.'"  <u>Davis v. Team Elec.</u>

<u>Co.</u>, 520 F.3d 1080, 1095 (9th Cir. 2008) (quoting <u>Meritor Sav. Bank, FSB v.</u>

<u>Vinson</u>, 477 U.S. 57, 65 (1986)).  Section 1981 prohibits discrimination in the

"benefits, privileges, terms and conditions" of employment.  42 U.S.C. § 1981(b);

<u>Surrell v. Calif. Water Serv. Co.</u>, 518 F.3d 1097, 1103 (9th Cir. 2008) ("When

analyzing § 1981 claims, we apply the same legal principles as those applicable in

a Title VII disparate treatment case.").

       The prima facie elements of a disparate treatment claim under Title

VII and § 1981 are:  (1) membership by a plaintiff in a protected class; (2)

satisfaction by the plaintiff of the qualifications for the position in issue; (3) an

adverse employment action; and (4) more favorable treatment of similarly situated

individuals outside the plaintiff's protected class.  See Davis v. Team Elec. Co.,

520 F.3d 1080, 1089 (9th Cir. 2008); see also Nicholson v. Hyannis Air Serv., Inc.,

580 F.3d 1116, 1123 (9th Cir. 2009); Metoyer v. Chassman, 504 F.3d 919, 930

(9th Cir. 2007) (stating that courts apply "the same legal principles as those

applicable in a Title VII disparate treatment case") (quoting Fonseca v. Sysco Food

Servs. of Ariz., Inc., 374 F.3d 840, 850 (9th Cir. 2004)).  The Court evaluates

Plaintiff's SAC in light of this standard to determine whether it contains sufficient

facts that, accepted as true, states a plausible claim.  See Washington v. Certainteed

Gypsum, Inc., 2011 WL 3705000, at *5 (D. Nev. Aug. 24, 2011) (citing Sablan v.

A.B. Won Pat Int'l Airport, 2010 WL 5148202, at *4 (D. Guam Dec. 9, 2010)

("Now, when evaluating employment discrimination complaints in the context of a

Rule 12(b)(6) motion to dismiss, district courts in the Ninth Circuit are proceeding

on the premise that although it may not be necessary that the complaint have facts

constituting all the elements of a prima facie in order to survive the motion to

dismiss, those elements are nonetheless relevant to the court's analysis of the

sufficiency of the complaint.").

Here, Plaintiff belongs to a protected class as he is African-American.

See Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1031 (9th Cir. 2006)

(African-Americans as protected class).  The SAC alleges that he was performing

18

his job satisfactorily and that he was terminated, an adverse employment action.

Plaintiff asserts that a non-African American security guard, whom he refers to as

"EB, utilized personal remarks in his shift report, but was not reprimanded," while

Plaintiff was reprimanded for the same conduct.  (SAC ¶ 29.1.)  Plaintiff also

contends that his supervisor did not report EB's failure to follow protocol

regarding answering the security phone line, but reported Plaintiff's "alleged

failure to follow protocol on a lost and found wallet." (Id. ¶¶ 30.1, 46.5.)  Viewing

the SAC in the light most favorable to the Plaintiff, the Court finds the allegations

regarding similarly situated individuals sufficient.  The Court therefore concludes

that Plaintiff has alleged a disparate treatment claim.

    2.    <u>Hostile Work Environment</u>

        To establish a prima facie case for a Title VII hostile workplace claim

premised on race, "a plaintiff must show: (1) that he was subjected to verbal or

physical conduct of a racial . . . nature; (2) that the conduct was unwelcome; and

(3) that the conduct was sufficiently severe or pervasive to alter the conditions of

the plaintiff's employment and create an abusive working environment." <u>Vasquez</u>

<u>v. County of Los Angeles</u>, 349 F.3d 634, 642 (9th Cir. 2003).

        "Generally, a plaintiff alleging racial or national origin harassment

would present facts showing that he was subjected to racial epithets in the

19

workplace." <u>Kang v. U. Lim. America, Inc.</u>, 296 F.3d 810, 817 (9th Cir. 2002).  A

Plaintiff may also allege facts showing that the abuse occurred because of the

supervisor's view of his race or national origin.  <u>Id.</u>

   Here, from what the Court can glean from the SAC, Plaintiff makes

only conclusory allegations that actions against him were based upon his race.  The

SAC lacks any allegations that his supervisors even mentioned or alluded to

Plaintiff's race.

   Moreover, the SAC fails to allege conduct that was so severe or

pervasive to alter the conditions of Plaintiff's employment and create an abusive

work environment.  Whether conduct is sufficiently severe or pervasive to violate

Title VII turns on "all the circumstances, including the frequency of the

discriminatory conduct; its severity; whether it is physically threatening or

humiliating, or a mere offensive utterance; and whether it unreasonably interferes

with an employee's work performance." <u>Vasquez</u>, 349 F.3d at 642.  Additionally,

"[t]he working environment must both subjectively and objectively be perceived as

abusive." <u>Id.</u>   In <u>Vasquez</u>, the Ninth Circuit examined other hostile work

environment cases and determined that the alleged conduct in <u>Vasquez</u> was not

severe or pervasive enough to violate Title VII.  <u>Id.</u> at 643.  Cases cited by the

court illustrating a hostile work environment include: <u>Draper v. Coeur Rochester,</u>

Inc., 147 F.3d 1104 (9th Cir. 1998) (defendant created a hostile work environment where the plaintiff's supervisor made repeated sexual remarks about the plaintiff over a two-year period, calling her "gorgeous" and "beautiful" rather than her name, telling her about his sexual fantasies and his desire to have sex with her, commenting on her "ass," and asking over a loudspeaker if she needed help changing clothes); Nichols v. Azteca Restaurant Enterprises, Inc., 256 F.3d 864 (9th Cir. 2001) (defendant created a hostile work environment where a male employee was subjected to a relentless campaign of insults, name-calling, vulgarities, and taunts of "faggot" and "fucking female whore" by male co-workers and supervisors at least once a week and often several times a day).  In contrast, cases where the court did not find a hostile work environment included:  Sanchez v. City of Santa Ana, 936 F.2d 1027 (9th Cir. 1990) (no reasonable jury could have found a hostile work environment despite allegations that the employer posted a racially offensive cartoon, made racially offensive slurs, targeted Latinos when enforcing rules, provided unsafe vehicles to Latinos, did not provide adequate police backup to Latino officers, and kept illegal personnel files on plaintiffs because they were Latino); Kortan v. California Youth Authority, 217 F.3d 1104 (9th Cir. 2000) (no hostile work environment when a supervisor called female employees "castrating bitches," "Madonnas," or "Regina" on several occasions in

plaintiff's presence; the supervisor called the plaintiff "Medea"; the plaintiff

complained about other difficulties with that supervisor; and the plaintiff received

letters at home from the supervisor).

In Vasquez, the plaintiff alleged that another employee of a slightly

higher rank told plaintiff that he had "a typical Hispanic macho attitude" and that

he should consider transferring to the field because "Hispanics do good in the

field" in statements more than six months apart, yelled at him twice in front of the

youth plaintiff was supervising, made negative comments to the youth behind his

back, and submitted two memos about plaintiff allegedly containing false

complaints.  Id. 642–43.

Here, Plaintiff does not allege sufficient facts demonstrating that any

conduct was severe or pervasive enough to violate Title VII.  For example,

Plaintiff makes several allegations of his supervisor's "taunting and vindictive

campaign" against him by calling him "Assistant" in reference to a "SHAM

promotion" of Plaintiff.  (See, e.g., SAC ¶ 39.1.)  The Court does not see how this

could be sufficiently abusive, much less create a hostile work environment.

Plaintiff's other complaints about being reprimanded also do not rise to the level of

the cases cited above.

Hostile work environment claims under Title VII contain the same elements of a § 1981 hostile work environment claim.  <u>Johnson v. Riverside Heathcare System, LP</u>, 534 F.3d 1116, 1122 n.3 (9th Cir. 2008) ("[T]he 'legal principles guiding a court in a Title VII dispute apply with equal force in a § 1981 action.'") (citing <u>Manatt v. Bank of Am.</u>, 339 F.3d 792, 797 (9th Cir. 2003)).  Thus, the Court finds that Plaintiff fails to state a claim for hostile work environment under Title VII and § 1981.

The Court GRANTS Defendants' Motion as to Plaintiff's hostile work environment claims.

<u>3.</u>     <u>Retaliation</u>

To state a claim for retaliation under Title VII, a plaintiff must establish that: "(1) the employee engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal link between the protected activity and the adverse employment decision."  <u>Davis v. Team Elec. Co.</u>, 520 F.3d 1080, 1093–94 (9th Cir. 2008); <u>Raad v. Fairbanks North Star Borough School Dist.</u>, 323 F.3d 1185, 1197 (9th Cir. 2003).  Retaliation claims asserted under § 1981 are analyzed in the same manner as claims brought under Title VII.  <u>See Surrell</u>, 518 F.3d at 1107–08.

An employee's formal or informal complaints to a supervisor about unlawful discrimination constitute "protected activity."  See Passantino v. Johnson & Johnson Consumer Prod., Inc., 212 F.3d 493, 506 (9th Cir. 2000).  Meanwhile, "adverse employment action" has been interpreted to mean "any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity."  Ray v. Henderson, 217 F.3d 1234, 1242–43 (9th Cir. 2000) (adopting the EEOC test for determining whether an act constitutes an "adverse employment action," as set forth in EEOC Compliance Manual Section 8, "Retaliation," ¶ 8008 (1998)).

To show a causal link between activity protected under Title VII and retaliation by an employer, a plaintiff must at least raise an inference that the protected activity was the likely reason for the adverse action and that the employer was aware the plaintiff had engaged in protected activity.  Cohen v. Fred Meyer, Inc., 686 F.2d 793, 798 (9th Cir. 1982).  Courts may infer causation based on a close temporal proximity between the protected activity and the alleged violation, but the retaliation must be "fairly soon" after the protected activity.  Villarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1065 (9th Cir. 2002); see also Miller v. Fairchild Indus., 885 F.2d 498, 505 (9th Cir. 1989) (prima facie case of

24

causation was established when discharges occurred forty-two and fifty-nine days after EEOC hearings).

Here, Plaintiff alleges that in June 2009, he complained to property manager Ralph Ahles about "revengeful differential treatment being directed towards him," and that on July 22, 2009, Plaintiff verbally complained to his supervisor  "about comparators being treated better than the Plaintiff."  These complaints constitute protected activity because they pertain to discriminatory treatment.  Plaintiff was fired August 6, 2009, weeks after Plaintiff claims he complained to his superiors.  Plaintiff has stated a claim for retaliation.  Therefore, the Court DENIES Defendants' Motion as to this claim.

    B.    Intentional Infliction of Emotional Distress (IIED)

Under Hawai'i law, IIED is an independent tort to be analyzed separately from other claims.  Hac. v. Univ. of Haw., 73 P.3d 46, 60 (Haw. 2003); Nelson v. Univ. of Haw., 38 P.3d 95, 113 (Haw. 2001).  To state a claim for IIED, Plaintiff must allege sufficient facts to establish:  "(1) that the act allegedly causing the harm was intentional or reckless, (2) that the act was outrageous, and (3) that the act caused (4) extreme emotional distress to another."  Enoka v. AIG Haw. Ins. Co., 128 P.3d 850, 872 (Haw. 2006) (citing Hac, 73 P.3d at 60–61).

The Supreme Court of Hawaiʻi has interpreted the term "outrageous," for purposes of an IIED claim, to mean "without just cause or excuse and beyond all bounds of decency." Enoka, 129 P.3d at 872 (citing Lee v. Aiu, 936 P.2d 655, 670 n.12 (1997) (internal quotation marks and citations omitted)). "Moreover, 'extreme emotional distress' constitutes, inter alia, mental suffering, mental anguish, nervous shock, and other 'highly unpleasant mental reactions.'" Id. (quoting Hac, 73 P.3d at 60).

Courts have found "outrageous" conduct under Hawaiʻi law where the defendant insurance company intentionally misled the plaintiff claimant "in an attempt to gain and exploit her trust" and "refused to settle the case for what it was worth," Young v. Allstate Ins. Co., 198 P.3d 666, 691 (Haw. 2008), and where the defendant hospital lost the remains of the plaintiff's infant child, Ritchie v. Wahiawa General Hospital, 597 F. Supp. 2d 1108, 1112 (D. Haw. 2009). In contrast, courts have found no outrageous conduct where plaintiff's supervisor yelled at her over the phone and criticized her appearance in front of other employees, Shoppe v. Gucci America, Inc., 14 P.3d 1049, 1068 (Haw. 2000), and where the defendant insurance company denied plaintiff's claim based on the statute of limitations which had not yet expired when plaintiff made her claim for benefits. Enoka, 128 P.3d at 871–72.

26

Here, from what the Court can gather from the SAC, Plaintiff alleges that he was the subject of a "SHAM promotion" memo, that he was disciplined for various conduct that others were not reprimanded for, and that a superior "rant[ed]" at him while terminating Plaintiff's employment.  In light of the cases cited above, the Court finds that this conduct does not rise to the level of "outrageous" or "beyond the bounds of decency."

As to the extreme emotional distress element, courts have found extreme emotional distress "where a reasonable [person], normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case," Shoppe, 14 P.3d at 1068 (internal quotations omitted) (quoting Rodrigues v. State, 472 P.2d 509, 520) (Haw. 1970)), and where a plaintiff "suffered unnecessary physical distress, severe shame, anxiety, worry, mental and emotional distress, fear, loss of time and expenses," Young, 198 P.3d at 691–92 (internal quotations omitted).

Here, Plaintiff alleges suffering "severe emotional distress" such as worry, nausea, and eating and sleeping problems.  This appears to sufficiently meet the extreme emotional distress element, but because the conduct alleged does not rise to the level of outrageous, the Court finds that Plaintiff's IIED claim fails.

27

The Court GRANTS Defendants' Motion as to Plaintiff's IIED claim, with leave to amend.

III.    Improper Service

Defendants assert that Plaintiff failed to properly serve the SAC because it was hand delivered to defense counsel's office and not directly to Defendants, and because no summons was served with a copy of the complaint. (Doc. # 39-1 at 8–9.)   Defendants also assert that Plaintiff has failed to provide the Court with any proof of service.  (Id.)  Finally, Defendants assert that there is no evidence that a summons was served with the original Complaint or First Amended Complaint.  (Id.)

In his Opposition, Plaintiff asserts that Defendants have not been prejudiced by his "serving of his complaints and summons" upon the office of Defendants' counsel, which he contends is "the acting 'REGISTERED AGENT[]'" for Defendants.  (Doc. # 50 at 3.)  Plaintiff also cites Rule 4(h)(1)(B), which provides that a business entity may be served

> by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant[.]

Fed. R. Civ. P. 4(h)(1)(B).

28

"When serving a corporation, Rule 4(h) requires personal service on someone at the corporation, and service by mail to a general corporate address is not sufficient." Belle v. Chase Home Fin. LLC, 2007 WL 1518341, at *3 (S.D. Cal. May 22, 2007) (citing Larsen v. Mayo Med. Ctr., 218 F.3d 863, 868 (8th Cir. 2000) (service on corporation was ineffective "because the summons and complaint were mailed and not personally served on anyone during the limitations period."); see also Pathak v. Omaha, 2011 WL 1152656 at *1 (C.D. Cal. March 28, 2011) (holding that service by certified mail is insufficient under FRCP 4(h)).

Service may also be effected by any method authorized under the law of the state in which the district court is located or where service is made. Fed. R. Civ. P. 4(h)(1)(A). Hawaii Rule of Civil Procedure ("HRCP") 4(d)(3) mandates service of a corporation in the same manner as FRCP 4(h)(1)(B).

Plaintiff appears to have served a summons with a copy of the original Complaint. (See Docs. # 2, 7.) However, as far as the Court can determine, Plaintiff's Amended Complaint filed on February 14, 2009 and his SAC filed on September 23, 2001 did not include a summons. On February 16, 2011, Plaintiff filed with the Court a Proof of Service stating that he mailed via First Class Mail a copy of his Amended Complaint to Defendants. (Doc. # 11.) The Proof of Service does not mention, nor does there appear to be, a summons or other document

29

containing information required in a summons.[3]  Moreover, mailing a copy of a

complaint does not meet the requirements under FRCP 4(h) or HRCP 4(d).

Although the Federal Rules do not expressly define the term "delivery" under Rule

4(h)(1)(B), courts have determined that Rule 4 requires personal service.  See

Larsen, 218 F.3d at 868; see also Pathak, 2011 WL 1152656 at *1.  HRCP 4(d)(3)

also requires personal delivery of a copy of the summons and complaint to an

individual listed therein.  See Wagner v. World Botanical Gardens, Inc., —P.3d—,

2011 WL 6811263 at *6 (Haw. Ct. App. December 23, 2011).

Plaintiff's SAC filed on September 23, 2011 also suffers from

improper service.  In Plaintiff's Certificate of Service attached to the SAC, Plaintiff

states that he hand delivered a copy of the SAC to Defendants through defense

counsel.  (Doc. # 38-3.)  Plaintiff attached a one-page "Certificate of Service" at

the end of the SAC, but there also does not appear to be a summons or other

document containing information required in a summons.  Defense counsel asserts

that Defendants never waived service, and there is no evidence of a waiver.  The

record also does not show any proof of service for the SAC as required by Rule

4(l).  See Fed. R. Civ. P. 4(l) ("Unless service is waived, proof of service must be

---

[3] Under Rule 4(a)(1), a summons must, inter alia, be signed by the clerk, bear the court's seal, and "notify the defendant that a failure to appear and defend will result in a default judgment."

made to the court.  Except for service by a United states marshal or deputy

marshal, proof must be by the server's affidavit.").

For these reasons, the Court concludes that Plaintiff did not properly

serve Defendants.  However, the Court has discretion to allow Plaintiff an

extension of time to properly serve Defendants.

Rule 4(c)(1) requires that a plaintiff serve a summons and complaint

"within the time allowed by Rule 4(m)" – that is, within 120 days after the

complaint is filed.  Fed. R. Civ. P. 4(c)(1), 4(m).  Rule 4(m) states, in relevant part:

> If a defendant is not served within 120 days after the complaint is filed, the
> court—on motion or on its own after notice to the plaintiff—must dismiss
> the action without prejudice against that defendant or order that service be
> made within a specified time. But if the plaintiff shows good cause for the
> failure, the court must extend the time for service for an appropriate period.

Absent a showing of good cause, courts have discretion to "extend time for service

upon a showing of excusable neglect."  Lemoge v. United States, 587 F.3d 1188,

1198 (9th Cir. 2009) (citing In re Sheehan, 253 F.3d 507, 512 (9th Cir. 2001).  In

making extension decisions under Rule 4(m), a district court may consider factors

"like a statute of limitations bar, prejudice to the defendant, actual notice of a

lawsuit, and eventual service."  Efaw v. Williams, 473 F.3d 1038, 1041 (9th Cir.

2007) (citation omitted).

Here, Defendants do not show that they have suffered prejudice as a result of not being properly served.  Defendants had actual notice of Plaintiff's complaints, as evidenced by their Motions to Dismiss. The Court therefore orders Plaintiff to properly serve Defendants with his amended complaint within 30 days of the filing of this Order.

IV.   <u>Leave to Amend</u>

Pursuant to Rule 15(a)(2), courts should "freely give leave [to amend] when justice so requires."  "Dismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by an amendment."  <u>Moss v. U.S. Secret Service</u>, 572 F.3d 962, 792 (9th Cir. 2009).  "However, 'liberality in granting leave to amend is subject to several limitations.'" <u>Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys.</u>, 637 F.3d 1047, 1058 (9th Cir. 2011) (quoting <u>Ascon Props., Inc. v. Mobil Oil Co.</u>, 866 F.2d 1149, 1160 (9th Cir. 1989)).  "Those limitations include undue prejudice to the opposing party, bad faith by the movant, futility, and undue delay."  <u>Id.</u> (citing <u>Ascon Props.</u>, 866 F.2d at 1160). "Further, '[t]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.'" <u>Id.</u> (quoting <u>Ascon Props.</u>, 866 F.2d at 1160).

The Court recognizes that it may be possible for Plaintiff to state a claim for his hostile work environment and IIED claims if provided the opportunity to amend his Complaint.  Plaintiff will therefore have 30 days from the filing of this Order to file and serve an amended complaint.  The Court notes again that Plaintiff's SAC contains a mix of relevant as well as irrelevant and confusing allegations.  The Court therefore urges Plaintiff to—if he chooses to file an amended complaint—eliminate the extraneous allegations that permeate his SAC.  Plaintiff is again advised that any amended complaint must clearly identify the specific causes of action alleged and the factual allegations upon which those claims are based.

The Court will not refer to any previous pleadings to make any amended complaint complete.  Local Rule 10.3 requires that an amended complaint be complete in itself without reference to any prior pleading.  See King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987).  Furthermore, as a general rule, an amended complaint supersedes the original complaint.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).   In an amended complaint, each claim and the involvement of each Defendant must be sufficiently alleged.

V.      Summary Judgment Motion

Because the Court is granting Plaintiff leave to amend his SAC, the Court determines that ruling on Plaintiff's Motion for Summary Judgment is premature.  Therefore, the Court DENIES WITHOUT PREJUDICE Plaintiff's Motion for Summary Judgment.

CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant AOAO Royal Capital Plaza's Motion to Dismiss as to Plaintiff's Title VII claims (Doc. # 45); **GRANTS IN PART AND DENIES IN PART** Defendants' Motion to Dismiss (Docs. # 39, 42); and **DENIES WITHOUT PREJUDICE** Plaintiff's Motion for Summary Judgment ("Motion").  (Doc. # 46.)

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, January 30, 2012.



_____
David Alan Ezra
United States District Judge

McAllister v. Hawaiiana Management Co., Ltd., et al., CV No. 11-00056 DAE-BMK; ORDER: (1) GRANTING IN PART DEFENDANT ROYAL CAPITAL PLAZA'S MOTION TO DISMISS; (2) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; AND(3) DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT