IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WILLIS C. McALLISTER,<br><br>        Plaintiff,<br><br>        vs.<br><br>HAWAIIANA MANAGEMENT COMPANY,<br>LTD.; AOAO ROYAL CAPITAL<br>PLAZA, Association of<br>Apartment Owners of Royal<br>Capital Plaza,<br><br>        Defendants.<br>_____ | )<br>)<br>)<br>)<br>)<br>)   Civ. No. 11-00056 ACK-KSC<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**ORDER DENYING AS MOOT DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE, JUDGMENT NOTWITHSTANDING THE VERDICT; AND DENYING PLAINTIFF'S RENEWED 50(B) MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE, JUDGMENT NOTWITHSTANDING THE VERDICT OR A REQUEST FOR A NEW TRIAL**

**BACKGROUND**

Plaintiff Willis C. McAllister ("McAllister" or "Plaintiff"), an African-American, proceeding pro se, filed suit against defendants Hawaiiana Management Company, Ltd. ("HMC") and AOAO Royal Capital Plaza ("RCP") alleging that Defendants unlawfully discriminated and retaliated against Plaintiff and created a hostile work environment in violation of Title VII of

the Civil Rights Act of 1964 and 42 U.S.C. § 1981 on the basis of race.  (See generally Third Amended Compl., Doc. 62.)

On January 24, 2011, Plaintiff filed suit against Defendants in the United States District Court for the District of Hawaii.  (Doc. No. 1.)  The case was originally assigned to Senior District Judge David Alan Ezra.  Plaintiff subsequently filed an Amended Complaint on February 14, 2011.  (Doc. No. 9.) On March 31, 2011, Plaintiff filed a Motion to Dismiss his Common Law Tort Claims for Negligence.  (Doc. No. 15.)  The Court Granted Plaintiff's motion on May 13, 2011.  (Doc. No. 22.)  On July 15, 2011, Plaintiff filed a Motion for Partial Summary Judgment.  (Doc. No. 25.)

On August 24, 2011, the Court sua sponte dismissed the Plaintiff's Complaint without prejudice for failure to comply with Federal Rule of Civil Procedure 8; denied without prejudice Plaintiff's Motion for Partial Summary Judgment as moot; and denied without prejudice Plaintiff's Motions to Strike various Defendants' declarations and exhibits. (Doc. No. 36.)

On September 23, 2011, Plaintiff filed a Second Amended Complaint against Defendants.  (Doc. No. 38, the "SAC.") Defendant RCP subsequently filed a motion to dismiss based upon statute of limitations grounds (Doc. No. 45), and Defendants jointly filed a motion to dismiss based upon failure to comply with Federal Rules of Civil Procedure 8 and 12(b)(6) (Doc. Nos.

39, 42.)  Plaintiff also filed a Motion for Summary Judgment on December 2, 2011.  (Doc. No. 46.)

On January 30, 2012, the Court granted Defendant RCP's motion to dismiss as to Plaintiff's Title VII claims based upon a finding that Plaintiff's Title VII claims against RCP did not relate back to the original Complaint and that the claims therefore were time-barred.  (Doc. No. 61 at 15-16, hereinafter "January 30, 2012 Order.")  The Court also granted in part and denied in part Defendants' motion to dismiss.  Id. at 16-28.  The Court granted the motion to dismiss as to Plaintiff's claims for hostile work environment and intentional infliction of emotional distress ("IIED"), with leave to amend; however the Court concluded that Plaintiff had alleged claims for disparate treatment and retaliation.  Id.[1]

On February 27, 2012, Plaintiff filed his Third Amended Complaint against Defendants (Doc. No. 62, hereinafter "TAC").  Plaintiff asserted the following five causes of action in the TAC: (1) hostile work environment - retaliation; (2) hostile work environment - disparate treatment-race; (3) harassment based on race/tangible action (vicarious liability); (4) hostile work environment - harassment-race; and (5) intentional infliction of

---

[1]  The Court also denied without prejudice Plaintiff's Motion for Summary Judgment, finding that ruling on the motion was premature because the Court granted Plaintiff leave to amend the SAC.  Id. at 34.

-3-

emotional distress - race (IIED).  (TAC ¶¶ 5.1-5.5.)  On March 13, 2012, Defendants filed a Motion to Dismiss the TAC with Prejudice, asserting that Plaintiff failed to correct the SAC's deficiencies.  (Doc. No. 72.)  On March 15, 2012, Defendant RCP filed a Motion to Dismiss Plaintiff's Claims Against Them With Prejudice.  (Doc. No. 77.)

On May 31, 2012, the Court issued an Order (1) Granting in Part and Denying in Part Defendants' Motion to Dismiss, and (2) Granting RCP's Motion to Dismiss.  (Doc. No. 117.)  With respect to Defendants' joint Motion to Dismiss, the Court denied the motion with respect to Plaintiff's claim for hostile work environment (id. at 13), however it granted the motion as to Plaintiff's IIED claim (id. at 14).  The Court granted RCP's motion to dismiss based upon a finding that Plaintiff's Title VII claims against RCP were time-barred because Plaintiff failed to name RCP as a defendant until after the statutory period had passed.  Id. at 19.

On June 15, 2012, Plaintiff filed a Motion for Reconsideration of the Court's May 31, 2012 Order that Dismissed Plaintiff's Title VII Claims against RCP.  (Doc. No. 120.)  On July 31, 2012, the Court issued an Order Granting Plaintiff's Motion for Reconsideration, and accordingly denied RCP's Motion to Dismiss filed March 15, 2012.  (Doc. No. 138, at 10.)

-4-

On August 3, 2012, this case was reassigned from Senior District Judge David Alan Ezra to this Court for all further proceedings. (Doc. No. 140.)

On September 4, 2012, Plaintiff filed two motions in limine (Doc. Nos. 168, 169), and Defendants filed 10 (ten) motions in limine (Doc. Nos. 151, 155-163). On September 11, 2012, Plaintiff filed oppositions to all 10 (ten) of the Defendants' motions in limine (Doc. No. 193), and Defendants filed oppositions to both of Plaintiff's motions (Doc. Nos. 185, 186). The Court heard argument on the motions in limine at the final pretrial conference on October 11, 2012. (Doc. No. 206.) On October 22, 2012, the Court issued an Order Granting in Part and Denying in Part Defendants' Motions in Limine, and Granting Plaintiff's Motions in Limine. (Doc. No. 229.)

On October 16, 2012, jury trial commenced on Plaintiff's claims, all brought pursuant to Title VII and 42 U.S.C. Section 1981: Disparate Treatment; Hostile Work Environment/Harassment; and Retaliation. (See Special Verdict Form at 3, 4, 6.) On October 31, 2012, after Plaintiff and Defendants had rested, Defendants filed a Motion for Judgment as a Matter of Law or in the Alternative, Judgment Notwithstanding the Verdict. (Doc. No. 258.) After hearing oral argument on the motion, the Court reserved judgment and took the matter under submission. On November 1, 2012, Plaintiff filed an opposition

-5-

to Defendants' motion (Doc. No. 263), as well as his own Motion for Judgment as a Matter of Law or in the Alternative Judgment Notwithstanding the Verdict on his Vicarious Liability Claim. (Doc. No. 262.)  The Court took Plaintiff's motion under submission at that time.

On November 5, 2012, after a 12-day jury trial, the jury returned a verdict for Defendants on all claims.

The jury determined the liability of each Defendant separately.  First, the jury considered Plaintiff's claims against Defendant RCP.  As to Plaintiff's claims for Disparate Treatment, the jury found that Plaintiff had not proved by a preponderance of the evidence that Defendant RCP gave more favorable treatment to similarly situated individuals outside Plaintiff's protected class.  See Defendant RCP's Special Verdict Form at 3 (November 5, 2012).  As to Plaintiff's claims for Hostile Work Environment - Harassment, the jury found that Plaintiff had not proved by a preponderance of the evidence that he was subjected to verbal or physical conduct of a racial nature by a supervisor, co-employee, or third party.  See id. at 4. Finally, as to Plaintiff's claims for Retaliation, the jury found that Plaintiff had not proved by a preponderance of the evidence that he was subjected to an adverse employment action(s) because of his complaints about being harassed or discriminated against on account of his race and receiving disparate treatment because of his race.  Id. at 7.

-6-

Next, the jury concluded that Defendant HMC was not a "joint employer" with Defendant RCP, thereby finding in favor of Defendant HMC on all counts. <u>See</u> HMC Special Verdict Form, at 2 (November 5, 2012).

On November 5, 2012, the jury's verdict in favor of Defendants on all counts was read and filed in open Court. (<u>See</u> Doc. No. 264.)  The jury was polled.  Following the jury's verdict, on November 5, 2012, the Court asked Plaintiff if he had any further comments or argument with respect to his motion, at which time Plaintiff stated that he did not have anything further to add, other than ensuring that the Court noted his motion for appeal purposes. In light of Plaintiff's pro se status, on November 9, 2012, the Court issued a Minute Order informing Plaintiff that if he did not renew his motion pursuant to Federal Rule of Civil Procedure 50(b) within 28 days from the date upon which judgment was entered, Plaintiff would be precluded from challenging the sufficiency of the evidence on appeal.  (<u>See</u> Doc. No. 270.)[2]

On November 14, 2012, the Clerk of Court entered a judgment in favor of Defendants on all counts.  (Doc. No. 273.)

---

[2]   See <u>Nitko Holding Corp. v. Boujikian</u>, 491 F.3d 1086, 1089 (9th Cir. 2007) (holding that the plaintiff had waived its challenge to the sufficiency of evidence because it did not renew its pre-verdict Rule 50(a) motion by filing a post-verdict Rule 50(b) motion, and therefore the Court of Appeals was precluded from exercising its discretion to engage in even plain error review).

On December 12, 2012, Plaintiff filed a timely Rule 50(b) Renewed Motion for Judgment as a Matter of Law or in the Alternative, Judgment Notwithstanding the Verdict or a Request for a New Trial. (Doc. No. 274, hereinafter the "Motion.")   On December 19, 2012, Defendants filed a timely opposition. (Doc. No. 276, hereinafter the "Opposition.")  On January 2, 2013, Plaintiff filed a Reply. (Doc. No. 277.)  The Court finds this matter suitable for disposition without a hearing pursuant to Local Rule 7.2(e).

## STANDARD OF REVIEW

### A. Motion for Judgment As a Matter of Law

Federal Rule of Civil Procedure 50 states, in relevant part:

(a) Judgment as a Matter of Law.

    (1) In General. If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:

      (A) resolve the issue against the party; and

      (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

    (2) Motion. A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.

(b) Renewing the Motion After Trial; Alternative Motion for a New Trial. If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to

have submitted the action to the jury subject to the court's
later deciding the legal questions raised by the motion. No later
than 28 days after the entry of judgment—or if the motion
addresses a jury issue not decided by a verdict, no later than 28
days after the jury was discharged—the movant may file a renewed
motion for judgment as a matter of law and may include an
alternative or joint request for a new trial under Rule 59. In
ruling on the renewed motion, the court may:

> (1) allow judgment on the verdict, if the jury returned a
> verdict;
>
> (2) order a new trial; or
>
> (3) direct the entry of judgment as a matter of law.

Fed. R. Civ. P. 50(a) and (b).  Judgment as a matter of law is
authorized only when a jury's verdict is not supported by
substantial evidence.  See Mockler v. Multnomah County, 140 F.3d
808, 815, n. 8 (9th Cir. 1998).  "'Substantial evidence is such
relevant evidence as reasonable minds might accept as adequate to
support a conclusion even if it is possible to draw two
inconsistent conclusions from the evidence.'"  Gilbrook v. City
of Westminster, 177 F.3d 839, 856 (9th Cir. 1999) (citation
omitted).

     "[T]he standard for granting summary judgment 'mirrors'
the standard for judgment as a matter of law, such that 'the
inquiry under each is the same.'"  Reeves v. Sanderson Plumbing
Prods., Inc., 530 U.S. 133, 150 (2000) (citation omitted).  Thus,
in deciding whether judgment as a matter of law is warranted, the
Court may not assess the credibility of witnesses and must draw
all reasonable inferences in the nonmovant's favor.  Bell, 341

F.3d at 865.  The Court "may not substitute its view of the evidence for that of the jury." <u>Johnson v. Paradise Valley Unified Sch. Dist.</u>, 251 F.3d 1222, 1227 (9th Cir. 2001); <u>see also Harvey v. Office of Banks & Real Estate</u>, 377 F.3d 698, 707 (7th Cir. 2004) ("Our job at this stage is not to determine whether the jury believed the right people, but only to assure that it was presented with a legally sufficient basis to support the verdict.").

The Ninth Circuit "strictly adhere[s] to the requirements of Rule 50(b), which prohibit a party from moving for judgment as a matter of law after the jury's verdict unless that motion was first presented at the close of evidence." <u>Image Technical Servs., Inc. v. Eastman Kodak Co.</u>, 125 F.3d 1195, 1212 (9th Cir. 1997).  If a party fails to make a motion for judgment as a matter of law under Rule 50(a) before the case is submitted to the jury, "a party cannot question the sufficiency of the evidence either before the district court ... or on appeal." <u>Cabrales v. County of Los Angeles</u>, 864 F.2d 1454, 1459 (9th Cir. 1988) (emphasis omitted), vacated on other grounds, 490 U.S. 1087 (1989).  Moreover, when a party fails to renew its pre-verdict Rule 50(a) motion by filing a post-verdict Rule 50(b), it waives any challenge to the sufficiency of the evidence on appeal, even plain error review.  <u>See</u> <u>Nitco Holding Corp. v. Boujikian</u>, 491 F.3d 1086, 1089-90 (9th Cir. 2007) (citing <u>Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.</u>, 546 U.S. 394 (2006)).

**B.   Motion for a New Trial**

A motion for a new trial is governed by Federal Rule of Civil Procedure 59, which provides that after a jury trial, "[t]he court may, on motion, grant a new trial on all or some of the issues—and to any party ... for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a).

"Rule 59 does not specify the grounds on which a motion for a new trial may be granted." Zhang v. Am. Gem Seafoods, Inc., 339 F.3d 1020, 1035 (9th Cir. 2003). Instead, the Court is "bound by those grounds that have been historically recognized." Id. "Historically recognized grounds include, but are not limited to, claims 'that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving.'" Molski v. M.J. Cable, Inc., 481 F.3d 724, 729 (9th Cir. 2007) (citation omitted). In ruling on a motion for a new trial, "the district court has 'the duty to weigh the evidence as the court saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where, in the court's conscientious opinion, the verdict is contrary to the clear weight of the evidence.'" Id. (citation omitted and alterations).

In other words, in most cases, the judge should accept the findings of the jury; however, if the judge is left with the

definite and firm conviction that a mistake has been committed, he may grant a new trial:

> On the one hand, the trial judge does not sit to approve miscarriages of justice. His power to set aside the verdict is supported by clear precedent at common law and, far from being a denigration or a usurpation of jury trial, has long been regarded as an integral part of trial by jury as we know it. On the other hand, a decent respect for the collective wisdom of the jury, and for the function entrusted to it in our system, certainly suggests that in most cases the judge should accept the findings of the jury, regardless of his own doubts in the matter.... If, having given full respect to the jury's findings, the judge on the entire evidence is left with the definite and firm conviction that a mistake has been committed, it is to be expected that he will grant a new trial.

Landes Constr. Co. v. Royal Bank of Canada, 833 F.2d 1365, 1371-72 (9th Cir. 1987) (internal quotation and citations omitted).  "The judge can weigh evidence and assess the credibility of witnesses, and need not view the evidence from the perspective most favorable to the prevailing party." Id. at 1371.  But "the court is not justified in granting a new trial 'merely because it might have come to a different result from that reached by the jury.'" Roy v. Volkswagen of America, Inc., 896 F.2d 1174, 1176 (9th Cir. 1990) (citation omitted).

A district court's decision on a motion for new trial is reviewed for abuse of discretion. EEOC v. Pape Lift, Inc., 115 F.3d 676, 680 (9th Cir. 1997).

## DISCUSSION

**A.   Defendants' Motion for Judgment as a Matter of Law or Alternatively, for Judgment Notwithstanding the Verdict**

In light of the jury's verdict in favor of Defendants on all counts, the Court hereby DENIES AS MOOT Defendants' Motion for Judgment as a Matter of Law or Alternatively, for Judgment Notwithstanding the Verdict.[3]

**B.   Plaintiff's Renewed Motion for Judgment as a Matter of Law or Alternatively, for Judgment Notwithstanding the Verdict or a Request for a New Trial**

In his Motion, Plaintiff sets forth two central challenges to the jury's verdict:  (1) there was sufficient evidence of a joint employer relationship between the defendants; and (2) evidence at trial showed continuing disparate treatment violations, harassment and retaliation in a hostile work environment, which culminated in an adverse/tangible vicarious liability action on August 6, 2009.  (Motion at 2, 8.)

---

[3] The Court also deems Plaintiff's Rule 50(a) Motion for Judgment as a Matter of Law or in the Alternative, Judgment Notwithstanding the Verdict on his Vicarious Liability Claim (Doc. No. 262) to be moot in light of Plaintiff's December 12, 2012 filing of his Renewed Rule 50(b) Motion (Doc. No. 274). Further, the Court observes that the parties' request for judgment notwithstanding the verdict ("JNOV") actually refers to outdated terminology.  JNOV has been replaced as a renewal of the motion for judgment as a matter of law ("RJMOL") pursuant to Fed. R. Civ. P. 50.  See, e.g., The Vollrath Co. v. Sammi Corp., 9 F.3d 1455, 1458 n.2 (9th Cir. 1993).  Accordingly, the Court addresses the parties' request for JNOV herein by way of its detailed discussion of a Rule 50(b) RJMOL.

Generally, Defendants respond that Plaintiff's Motion raises no new arguments, is frivolous, and simply regurgitates the arguments made and previously rejected by the jury, arguing that the jury's verdict was "the <u>only</u> reasonable conclusion that could be reached given the exhibits introduced and testimony elicited during this three week trial."  (Opposition at 3, 7.)

In essence, Plaintiff's argument at trial was that he was subjected to disparate treatment and a hostile work environment due to his race, and was also retaliated against when Defendants terminated him based upon a protected activity. Defendants' central argument was that Plaintiff was terminated based upon gross misconduct, including insubordination, bad attitude, and multiple confrontations with homeowners, residents, and employees at RCP.  Defendants also asserted that "Plaintiff was often hostile during the trial and frequently exhibited bursts of anger to the witnesses and Defendants' counsel.  He even acted contrary to this Court's instructions during the trial, which only highlighted his insubordination, which is, ironically, one of the primary reasons" for his termination.[4] (Opposition at 10.)

The Court will address Plaintiffs' two central arguments in the order in which he presents them in his Motion.

---

[4] The Court observes that during the 12-day jury trial, Plaintiff repeatedly raised his voice and exhibited anger and outbursts toward multiple witnesses as well as defense counsel in the presence of the jury.

1.  **Evidence of Joint Employer Relationship**

In support of his argument that the Court should overturn the jury's verdict, Plaintiff first relies upon a docket entry wherein the Court purportedly granted Plaintiff's motion requesting that the Defendants be treated as Joint Employers. (Motion at 2, citing Doc. No. 255.)  Plaintiff also asserts that he presented "substantial, unrebutted, direct and indirect evidence, during trial that showed (by the preponderance of the evidence), that HMC and RCP were Joint Employers." Id. at 3. For example, Plaintiff contends that the evidence adduced at trial showed that Defendants utilized the same Human Resources Department, Employee Benefits Department, and Payroll Processing Department, as well as explicitly representing themselves jointly on various internal business forms and documents. Id. Further, Plaintiff asserts that there is overwhelming unrebutted documentary evidence as well as testimony establishing that Hawaiiana employee Ralph Ahles was an "integral part of the management decisions at RCP (hiring and firing) . . . ." Id. at 4-5.  Plaintiff also argues that Ralph Ahles "approved Howard Isono's decision to terminate the Plaintiff . . . ." Id. at 4.[5]

---

[5]  In his Reply, Plaintiff reargues the alleged failure of Howard Isono and Ralph Ahles to investigate various complaints, as well as rearguing other allegations of discrimination and disparate treatment, all of which were testified to by Plaintiff, as well as Larry Blanko, Howard Isono, and Ralph Ahles; with the jury considering all such testimony and assessing the credibility of the witnesses, and evidently accepting the testimony of
(continued...)

Defendants respond that the testimony and documentary evidence presented at trial support a finding that Defendants RCP and Hawaiiana were not in fact joint employers of Plaintiff.  For example, Defendants argue, Ralph Ahles testified that: (i) Plaintiff was a RCP employee, not a Hawaiiana employee; (ii) Mr. Ahles, a Hawaiiana employee, was not involved in Defendant RCP's day-to-day activities; (iii) Larry Blanko and Howard Isono, not Ralph Ahles, supervised Plaintiff; and (iv) although Ralph Ahles managed Howard Isono, it was Isono's duty to handle the hiring and firing of RCP employees, including Plaintiff.  (Opposition at 13.)

The Ninth Circuit Court of Appeals has held, and the Court's Jury Instruction No. 24 provided, that "[t]wo or more employers may be considered 'joint employers' if both employers control the terms and conditions of employment of the employee." E.E.O.C. v. Pacific Maritime Ass'n, 351 F.3d 1270, 1275 (9th Cir. 2003) (internal quotation marks omitted).  Moreover, "[n]umerous courts have considered the key to joint employment to be the right to hire, supervise and fire employees."  Id. at 1277 (citations omitted).

Further, the Court observes that its October 30, 2012 Minute Order contained a clerical error stating that the Court had granted Plaintiff's motion requesting that the Defendants be

---

[5]/ (...continued)
witnesses other than Plaintiff.  (See generally Reply.)

-16-

treated as Joint Employers during the October 30, 2012 conference with the parties.   (See Doc. No. 255) This error was later rectified in a January 4, 2013 Amended Minute Order stating that in fact the Court ruled that the issue of joint employers was a question of fact for the jury.  (Doc. No. 277.)  Moreover, the transcript of Court proceedings on October 30, 2012 clearly establishes that the Court did not grant the motion after careful consideration of the parties' arguments and the evidence presented thus far at trial.[6]  During the Court's meeting with the parties on October 30, 2012 outside the presence of the jury, the Court also informed Plaintiff that it would provide a jury instruction from the Eleventh Circuit Court of Appeals setting forth the standard for joint employer relationship.  (See id. at 1-3:9 - 1-3:12.)  The Special Verdict Form for Defendant Hawaiiana further substantiates the Court's clear ruling to submit this question to the jury, as the first question is:

**Question No. 1:**  Has the Plaintiff proven by a preponderance of the evidence that Hawaiiana Management Company was a joint employer of Plaintiff?

(Doc. No. 265, at 3.)  The jury had been provided with the following agreed-upon jury instruction prior to answering "no":

---

[6] See Tr. Vol. 1-1:10 - 1-3:25 ("Considering those matters I do think that is a fact determination to be made by the jury.")

**Jury Instruction No. 24**

It is not always clear under the law whether a person is an "employee" or not, or who the "employer" is.  Some people, for example, perform services for others while remaining self employed as independent contractors.  Others are clearly "employees," but a question may arise as to who the employer is; and, in some instances, an employee may have joint employers, that is, more than one employer at the same time.

So, a preliminary issue for your decision in this instance is the question whether the Plaintiff was an "employee" of the Defendant, AOAO Royal Capitol Plaza as well as, perhaps, an employee of Defendant, Hawaiiana Management Company.

You should resolve this question in light of the economic realities of the entire relationship between the parties, and should consider each of the following factors to the extent you find that a particular factor is applicable to the case:

(1) the nature and degree of control of the employee, and who exercises that control;

(2) the degree of supervision, direct or indirect of the employee's work, and who exercises that supervision;

(3) who exercises the power to determine the employee's pay rate or method of payment;

(4) who has the right, directly or indirectly, to hire, fire, or modify the employment conditions of the employee;

(5) who is responsible for the preparation of the payroll and the payment of wages;

(6) who made the investment in equipment and facilities used by the employee;

(7) who has the opportunity for profit and loss;

(8) the permanency and exclusivity of the employment;

(9) the degree of skill required to do the job;

(10) the ownership of the property or facilities where the employee works; and

(11) the performance of a specialty job within the production line integral to the business.

Consideration of all of the circumstances surrounding the work relationship is essential, and no one factor is determinative.  Nevertheless, the extent of the right to hire and fire and control the means and manner of the worker's performance is the most important factor.

(Doc. No. 279, at 26-27)  This clearly establishes that the Court

found the issue of joint employership to be a question of fact

for the jury, and both parties were made aware of this ruling

during the October 30, 2012 hearing and during trial.

The Court also concludes that substantial evidence was set forth at trial that Defendants were not, in fact, joint employers of Plaintiff.  See Gilbrook, 177 F.3d at 856.  At trial, witness Ralph Ahles testified that he was hired by Defendant Hawaiiana in April 2007.  Mr. Ahles further testified that Hawaianna works with approximately 500 associations, however employees of those associations are not Hawaiiana employees. He also stated that in his role as Property Manager, Mr. Ahles served in an administrative capacity for associations including Defendant RCP, pursuant to which Mr. Ahles would review hiring and firing decisions to make sure the actions were in accordance with the applicable rules, and mainly to ensure that such a decision was in line with the financial budget.  Significantly, Mr. Ahles also stated that Mr. Isono had the authority to terminate Plaintiff.  Mr. Blanko corroborated this testimony, stating that it was Mr. Isono who fired Plaintiff.  Additionally, Mr. Ahles testified that he was aware that Plaintiff was fired by Howard Isono, and cited insubordination, failure to follow orders, and Plaintiff's attitude as the grounds for termination.

The Court observes that in light of the jury's finding of no liability with respect to Defendant RCP, the issue of Defendant Hawaiiana's joint employer status is moot.  In any case, even if the jury had found Defendant RCP liable for violations of Title VII and/or Section 1981, the Court nevertheless concludes that the jury's finding of no joint

employer relationship is supported by substantial evidence. The Court acknowledges that Plaintiff presented some evidence of a potential joint employer relationship between Defendants RCP and Hawaiiana at trial, such as Ralph Ahles' review of Howard Isono's decision to terminate Plaintiff, and the fact that the Hawaiiana logo appeared on the Personnel Action Form pursuant to which Plaintiff was terminated. (See Motion, Ex. 10.) However, as discussed above, Defendants presented strong evidence that Hawaiiana was not a joint employer. The Court concludes that Plaintiff is not entitled to judgment as a matter of law pursuant to Rule 50(b) with respect to the jury's finding of no joint employer relationship. The Court concludes that the jury's verdict was supported by substantial evidence. Accordingly, the Court finds that Plaintiff has not set forth a sufficient basis to overturn the jury's verdict with respect to their finding that Defendants Hawaiiana and RCP were joint employers of Plaintiff. See Mockler, 140 F.3d at 815; see also Bell, 341 F.3d at 865.

For similar reasons, the Court concludes that a new trial is not warranted with respect to the issue of Defendants' joint employer relationship. The Court finds that the verdict is not against the weight of the evidence, nor was the trial unfair to Plaintiff. See Molski, 481 F.3d at 729. In fact, the Court permitted Plaintiff to examine witnesses and present his case at length, including to personally testify for three days, and permitted Plaintiff to introduce virtually all of his exhibits.

-20-

For these reasons, the Court concludes that Plaintiff is not entitled to a new trial pursuant to Fed. R. Civ. P. 59.

## B.   Plaintiff's Substantive Claims

### 1.   Disparate Treatment (Title VII & Section 1981)

The prima facie elements of a disparate treatment claim under Title VII and Section 1981 are: (1) membership by a plaintiff in a protected class; (2) satisfaction by the plaintiff of the qualifications for the position in issue; (3) an adverse employment action; and (4) more favorable treatment of similarly situated individuals outside the plaintiff's protected class. Davis v. Team Elec. Co., 520 F.3d 1080, 1089 (9th Cir. 2008). Defendants conceded that Plaintiff is a member of a protected class, and that he satisfied the qualifications for his position as a Security Officer.  (See RCP Special Verdict Form at 3.)

After a twelve-day trial, the jury determined that although an adverse employment action(s) had occurred, Plaintiff failed to prove by a preponderance of the evidence that Defendant RCP gave more favorable treatment to similarly situated individuals outside Plaintiff's protected class.  (See RCP Special Verdict Form at 3.)  Accordingly, the jury found in favor of Defendant RCP with respect to Plaintiff's disparate treatment claim.

Plaintiff argues, among other things, that he presented evidence at trial establishing the following: Larry Blanko

singled out Plaintiff and held him to a higher standard of work than his similarly situated co-workers by virtue of a "sham" promotion to Assistant Supervisor (Motion at 8-9, 18); Howard Isono created a new rule that only applied to Plaintiff, requiring Plaintiff to discuss differences between Plaintiff and Isono on a face-to-face basis (id. at 15); Mr. Isono reprimanded Plaintiff for making personal comments in his shift reports but did not reprimand Plaintiff's coworkers for the same behavior (id. at 16); and Mr. Blanko reported Plaintiff's alleged errors/omissions and failure to follow protocol with respect to a lost and found wallet, but failed to report Plaintiff's coworker Irvin Fujita, a non-African American security guard, for his alleged similar violations (id. at 25).

        Defendants respond that the evidence presented at trial did not support a finding that Defendant RCP gave more favorable treatment to similarly situated individuals outside Plaintiff's protected class.  For example, Larry Blanko testified that he never held Plaintiff to a higher work standard than other RCP employees, and never treated any RCP employee – including Irvin Fujita - more favorably than Plaintiff.  (Opposition at 9.) Howard Isono testified that he never treated Plaintiff differently because of his race, and terminated Plaintiff because, among other things, he was insubordinate, too aggressive in enforcing house rules, exercised bad judgment, exhibited poor communications skills with owners, tenants, guests, fellow

-22-

employees and supervisors, and refused to change his behavior even after repeated warnings to do so.  Id. at 12.  Ralph Ahles testified that he had no knowledge that Plaintiff was treated differently from other RCP employees on the basis of his race. Id. at 14.  Although Plaintiff stated that he planned to contact Ahles regarding the alleged discrimination; Ahles testified that Plaintiff never followed up prior to being terminated, notwithstanding Ahles having invited Plaintiff to meet with him concerning Plaintiff's claims.  (Opposition at 20.)[7] Significantly, all three of these witnesses also testified that they never made any racist comments against Plaintiff, a fact that Plaintiff admitted at trial.  Id. at 9, 12, 14.[8]  The exhibits admitted at trial further substantiate the testimony of

---

[7]  See also Plaintiff's Ex. 31, June 22, 2009 Incident Report, wherein Plaintiff stated he was going to call Ahles but never followed through.

[8]  The Court further observes that Plaintiff also testified that he was not subjected to verbal or physical conduct of a racial nature by any of his coworkers.  With respect to third parties, Plaintiff testified to one occasion on which one tenant (Kelly Okumura) subjected Plaintiff to verbal conduct of a racial nature while Plaintiff was inside the tenant's apartment pursuant to his duties as a security officer.  However, the Court finds that the jury could have reasonably rejected this testimony, in light of the fact that there was no corroborating testimony or documentary evidence supporting Plaintiff's statement, and witness Wade Okumura testified to the contrary.  Moreover, isolated and sporadic instances in which offensive language is used, including racial epithets, are by themselves insufficient to constitute a racially hostile work environment.  See Cooper v. Cate, Civ. No. 10-899 AWI DLB, 2012 WL 1669353, at *6 (E.D. Cal. May 11, 2012) (citing Faragher, 524 U.S. at 788; Harris v. Forklift Sys., 510 U.S. 17, 21 (1996)).

Mr. Blanko, Mr. Isono and Mr. Ahles.[9/]   Plaintiff, on the other hand, "complain[ed] that all of the complaining parties were 'lying racists.'"   (Opposition at 10.)

        The Court concludes that the jury was presented with a legally sufficient basis to support the verdict in favor of Defendants with respect to Plaintiff's Disparate Treatment claim. See, e.g., Harvey, 377 F.3d at 707.   Although Plaintiff testified that he was held to a higher standard than his similarly situated coworkers and subjected to disparate treatment, his testimony stood uncorroborated by the sworn statements of other witnesses at trial, as well as the documentary evidence.   On the other hand, as described above, Defendants elicited testimony that Plaintiff was never subjected to disparate treatment from three separate witnesses.   The Court concludes that the jury's verdict with respect to Plaintiff's Disparate Treatment claim was supported by substantial evidence.   See Mockler, 140 F.3d at 815. For similar reasons, the Court concludes that a new trial on the issue of Disparate Treatment is not warranted because the verdict

---

        [9/] See, e.g., May 7, 2009 letter from Isono to Plaintiff (Motion Ex. 4); June 22, 2009 letter from Isono to Plaintiff (Motion Ex. 5), corroborating Mr. Isono's testimony that he provided warning to Plaintiff of the need to change his behavior in order to save Plaintiff's job.   See also August 5, 2009 letter from Kelly Okumura, wherein homeowner Okumura described Plaintiff's behavior as "rude," "condescending," and "unprofessional."   Plaintiff presented no evidence that any of his similarly situated coworkers received any similar complaints from homeowners and were met with different treatment from Mr. Blanko or Mr. Isono.

is not contrary to the clear weight of the evidence.  See Molski,
481 F.3d at 729.


   **2.  Hostile Workplace - Race (Title VII & Section 1981)**

        To establish a prima facie case for a Title VII hostile
workplace claim premised upon race, a plaintiff must establish:
(1) that he was subjected to verbal or physical conduct of a
racial or sexual nature; (2) that the conduct was unwelcome; and
(3) that the conduct was sufficiently severe or pervasive to
alter the conditions of the plaintiff's employment and create an
abusive work environment.  Vasquez v. County of Los Angeles, 349
F.3d 634, 642 (9th Cir. 2003).

        Following deliberations, the jury concluded that
Plaintiff failed to show by a preponderance of the evidence that
he was subjected to verbal or physical conduct of a racial nature
by a supervisor, co-employee or third party.  (See RCP Special
Verdict form at 4.)  Consequently, the jury found in favor of
Defendant RCP with respect to Plaintiff's hostile work
environment claim.

        The Court concludes that the jury was provided with
more than sufficient evidence to support their verdict throughout
the 12 days of testimony and presentation of documentary
evidence.  Larry Blanko and Howard Isono both testified that they
never subjected Plaintiff to verbal or physical conduct of a
racial nature, a fact that Plaintiff corroborated during his

-25-

testimony.[10/] (Opposition at 9, 12, 14.)  Mr. Blanko testified
that Plaintiff was in fact fired for insubordination, failure to
use discretion, being overly aggressive in enforcing house rules
(including personal references in his shift reports), and acting
in an unprofessional manner.  (Id. at 10.)  Mr. Isono
characterized Plaintiff's behavior as very confrontational and
defiant, and stated that in spite of Isono's counseling sessions
with Plaintiff as well as written reprimand, Plaintiff continued
to engage in gross misconduct, warranting his termination on
August 6, 2009.  (Id. at 11.)  Isono had received complaints
about Plaintiff from three tenants or homeowners at RCP, stating
that Plaintiff was too aggressive, rude, and extremely
unprofessional.  (Id. at 11-12.)

        In fact, the only admissible evidence that Plaintiff
was subjected to verbal or physical conduct of a racial nature
was Plaintiff's own statements that RCP resident Kelly Okumura
uttered a racial epithet in Plaintiff's presence while he was in
her apartment.  This statement was not substantiated by any other
witness or any documentary evidence whatsoever.[11/]

        The Court concludes that the jury's verdict with

_____

        [10/] Although Plaintiff acknowledged that there was no racial
discrimination expressed by the words of Mr. Blanko or Mr. Isono,
he contended that the alleged racial discrimination was by way of
his treatment as an employee of RCP.

        [11/] In fact, Kelly Okumura's husband, Wade, who was
subpoenaed to testify at trial, denied that his wife made any
racist comments to Plaintiff.  (See Opposition at 15.)

respect to Plaintiff's Disparate Treatment claim was supported by substantial evidence.  Accordingly, Plaintiff is not entitled to judgment as a matter of law with respect to his Hostile Work Environment claim.  See Mockler, 140 F.3d at 815.

The Court further concludes that Plaintiff is not entitled to a new trial.  The jury heard testimony from three separate credible witnesses (namely, Blanko, Isono, and Ahles) that Plaintiff was not subjected to verbal or physical conduct of a racial nature by any of them.  The only evidence supporting this claim was Plaintiff's own testimony with respect to Kelly Okumura, an assertion that was not corroborated by any other witnesses or documents.  Further, Plaintiff was provided with an opportunity to examine witnesses and present his case with virtually no time limits, and the Court admitted almost all of Plaintiff's exhibits.  For these reasons, the Court concludes that a new trial is not warranted pursuant to Fed. R. Civ. P. 59.

### 3.  Retaliation (Title VII & Section 1981)

To state a claim for retaliation under Title VII and Section 1981, a plaintiff must establish that: (1) the employee engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there was a causal link between the protected activity and the adverse employment decision.  Davis, 520 F.3d at 1094.

The jury found that although Plaintiff showed by a

-27-

preponderance of the evidence that he engaged in an activity protected under federal law (that is, complaining that he was harassed or discriminated against because of his race), and that he suffered an adverse employment action(s), Plaintiff failed to establish by a preponderance of the evidence that he was subjected to the adverse employment action(s) because of his complaints about being harassed or discriminated against on account of his race and receiving disparate treatment because of his race. (See RCP Special Verdict Form at 7.)  Therefore, the jury found in favor of Defendant RCP with respect to Plaintiff's claim for retaliation.

Plaintiff asserts that he is entitled to judgment as a matter of law or a new trial with respect to his Retaliation claim based upon evidence that, among other things: management investigated the complaints of harassment made by non-African American coworkers Ron Sexton, Moe Paglinawan, and Irvin Fujita, however they failed to investigate Plaintiff's complaints (Motion at 12); Howard Isono began to write a series of uninvestigated allegations against Plaintiff within 24 hours of Plaintiff's complaint about Isono's hostility and harassment toward Plaintiff (id. at 13); Howard Isono's June 22, 2009 letter was a retaliation for Plaintiff's recent complaints about Isono's racial bias toward him (id. at 21); and after Plaintiff's August 4, 2009 harassment complaint, Plaintiff was fired two days later (id. at 29).

-28-

Defendants respond that the evidence at trial did not support a finding of retaliation.  The Court concurs.  For example, as Defendants assert, Larry Blanko testified that he never retaliated against Plaintiff regarding any alleged concealed tape recordings of Plaintiff's conversations, nor did he retaliate against Plaintiff after an incident involving a lost wallet.  (Opposition at 9.)  Further, Blanko stated that the reason for Plaintiff's termination was insubordination, failure to use discretion, being overly aggressive in enforcing house rules, and acting in an unprofessional manner.  Id. at 10. Howard Isono also testified that he never retaliated against plaintiff, stating that Plaintiff's termination was based upon his gross misconduct.  Id. at 12.  Isono stated that he did in fact investigate the owners' complaints against Plaintiff, as well as Plaintiff's complaints against the owners.  Id. Moreover, Isono gave Plaintiff at least two written warnings providing additional opportunities for Plaintiff to correct his actions and keep his job.[12/]  Additionally, Ralph Ahles testified that he had no knowledge of Blanko or Isono ever retaliating against Plaintiff.  (Opposition at 14.)  The documents admitted

---

[12/] See May 7, 2009 letter from Isono to Plaintiff, Plaintiff's Ex. 4 (reprimanding Plaintiff for his failure to use good judgment and providing Plaintiff with an opportunity to change his behavior); see also June 22, 2009 letter from Isono to Plaintiff, Plaintiff's Ex. 5 (providing Plaintiff with final notice regarding Plaintiff's insubordination and Isono's investigation of complaints against Plaintiff).

at trial also failed to causally connect Plaintiff's prior complaints of harassment or discrimination to Plaintiff's eventual termination, or to any other alleged adverse employment action taken against Plaintiff.[13/]  Letters from residents such as Kelly Okumura corroborated Howard Isono's characterization of Plaintiff's behavior as unprofessional.  (See August 5, 2009 letter from Okumura to Plaintiff, Motion at Ex. 9.)

The Court concludes that the jury's verdict in favor of Defendants with respect to Retaliation is supported by substantial evidence, and accordingly judgment as a matter of law is inappropriate.  See Mockler, 140 F.3d at 815; see also Fed. R. Civ. P. 50(b).  Larry Blanko and Howard Isono both testified that they did not retaliate against Plaintiff by subjecting him to an adverse employment action following his complaints of harassment and discrimination.  Moreover, the documentary evidence supports the jury's verdict.[14/]

Nor is a new trial warranted.  As an initial matter, as described above, Plaintiff was given an abundance of opportunities to present his case with virtually no limitations,

---

[13/] See, e.g., August 6, 2009 letter from Isono to Plaintiff, Motion at Ex. 1 (stating that Plaintiff was terminated for gross misconduct, insubordination, multiple confrontations with tenants, poor judgment, and failure to meet the expectations of RCP employees.)

[14/] The Court also observes that Plaintiff's own comportment in the presence of the jury included repeated outbursts and confrontational behavior toward witnesses and defense counsel.

and was allowed to admit almost all of his exhibits into evidence.   Further, the Court finds that the jury's verdict is not against the weight of the evidence, and the Court is certainly not left with a "definite and firm conviction that a mistake has been committed."  See Landes, 833 F.2d at 1371-72. For these reasons, the Court accepts the collective wisdom of the jury, and will not disturb the decision they reached after carefully deliberating following twelve days of trial.

        In sum, substantial evidence supports the jury's findings that Plaintiff failed to prove any of his three claims brought pursuant to Title VII and Section 1981 against both Defendant RCP and Defendant Hawaiiana.   Defendants presented specific and substantial evidence, which formed a legally sufficient basis for a reasonable jury to find in favor of Defendants.   See, e.g., Casumpang v. Int'l Longshore & Warehouse Union, Local 142, 411 F. Supp. 2d 1201, 1211 (D. Haw. 2005). Accordingly, the Court will not substitute its view of the evidence for that of the jury, as "[o]ur job at this stage is not to determine whether the jury believed the right people, but only to assure that it was presented with a legally sufficient basis to support the verdict."  Harvey, 377 F.3d at 707.   The Court finds that no miscarriage of justice will result from the denial of Plaintiffs' motion.  Wiles v. Dep't of Educ., 592 F. Supp. 2d 1176, 1199 (D. Haw. Dec. 19, 2008).

        The Court also declines to grant Plaintiff a new trial.

The Court observes that Plaintiff was provided with ample opportunities to present his case as a pro se litigant.  After Plaintiff's exhaustive direct and cross examinations of the trial witnesses, some lasting for more than two days, Plaintiff was permitted to testify for three days.  Moreover, after Plaintiff rested his case without presenting any evidence of damages, the Court alerted Plaintiff to this mistake and permitted Plaintiff to re-open his case in order to establish damages.  Following this allowance, Plaintiff set forth almost no proof of damages sustained from Defendants' alleged violations of Title VII and Section 1981.  Plaintiff has failed to establish that the jury committed a mistake with respect to its verdict in favor of Defendants.  Accordingly, Plaintiff is not entitled to a new trial pursuant to Rule 59.

## CONCLUSION

For the foregoing reasons, the Court:  (1) DENIES AS MOOT Defendants' Motion for Judgment as a Matter of Law Or In The Alternative, Judgment Notwithstanding The Verdict; and (2) DENIES Plaintiff's  Renewed 50(b) Motion for Judgment as a Matter of Law or in the Alternative, Judgment Notwithstanding the Verdict or a Request for a New Trial.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, January 11, 2013.



_____
Alan C. Kay
Sr. United States District Judge

Willis C. McAllister v. Hawaiiana Management Company, Ltd.; AOAO Royal Capital Plaza, Association of Apartment Owners of Royal Capital Plaza;, Civ. No. 056 ACK-KSC:  Order Denying as Moot Defendants' Motion for Judgment as a Matter of Law or in the Alternative, Judgment Notwithstanding the Verdict; and Denying Plaintiff's Renewed 50(b) Motion for Judgment as a Matter of Law or in the Alternative, Judgment Notwithstanding the Verdict or a Request for a New Trial.